UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAIYEZ AHMED,<br><br>        Plaintiff,<br><br>    v.<br><br>M. MARTEL, et al.,<br><br>        Defendants. | Case No. 1:13-cv-00941-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>**(ECF No. 17)**<br><br>**FOURTEEN DAY OBJECTION DEADLINE** |

**I.    PROCEDURAL HISTORY**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The matter proceeds against Defendants Cano, Combs, Davis, Martel, and Shannon on Plaintiff's First Amendment retaliation claim.

Before the Court is Defendants' November 25, 2014 motion to dismiss. (ECF No. 17.) Plaintiff filed an opposition. (ECF No. 19.) Defendants filed a reply. (ECF No. 20.)

The motion is deemed submitted. Local Rule 230(*l*).

**II.    LEGAL STANDARD – MOTION TO DISMISS**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency

of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998. Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

### III. PLAINTIFF'S CLAIMS

The relevant allegations in Plaintiff's first amended complaint (ECF No. 11) may be summarized essentially as follows.

On February 16, 2012, Plaintiff appeared before an Institutional Classification Committee ("ICC"), at which Defendants Martel, Davis, Shannon, Cano, and Combs agreed to release Plaintiff from solitary confinement to the general population. Defendants told Plaintiff that upon his release he should stop appealing a grievance he had filed regarding the lack of process he received at the prior ICC hearing. Plaintiff continued to pursue his appeal and was transferred to another, more dangerous institution on February 28, 2012. Defendants Martel, Davis, Shannon, Cano and Combs authorized the transfer. These defendants knew there was a risk of harm to Plaintiff at the new institution and transferred him in retaliation for pursuing his appeal and also in

retaliation for a hunger strike Plaintiff previously engaged in. There was no legitimate penological reason for the transfer.

**IV.   ARGUMENTS**

Defendants argue that Plaintiff's allegations fail to state a cognizable First Amendment claim and, alternatively, that they are entitled to qualified immunity on any such claim. They further argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. (ECF Nos. 17, 20.) Their arguments are discussed in greater detail below.

Plaintiff argues that his allegations state a claim for the reasons set out in the Court's screening order, and that Defendants are not entitled to qualified immunity. He does not address Defendants' argument regarding his official capacity claims. He asks for leave to amend any deficiencies found by the Court. (ECF No. 19.)

**V.   ANALYSIS**

    **A.   First Amendment Retaliation**

        **1.   Prior Screening Order**

As noted, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555); Moss, 572 F.3d at 969. This is the same standard the Court applies in screening a prisoner's complaint to determine whether it states a cognizable claim. Indeed, it is the very standard the Court applied in evaluating Plaintiff's complaint, and which lead to the Court's conclusion that the complaint stated cognizable claims. That is, the Court found that Plaintiff alleged claims which, when accepted as true for pleading purposes, would survive a Rule 12(b)(6) motion.

Nothing has since changed.

1 Nevertheless, Defendants argue that the very pleading which this Court found stated a cognizable claim does not state a cognizable claim and should be dismissed pursuant to Rule 12(b)(6). The Court would prefer not to duplicate its efforts and explain again why it reached the conclusions it did on screening, but the present motion to dismiss effectively asks it to do so. Accordingly, the Court will herein address the substantive issues presented by Defendants' motion.

### 2. Legal Standard – Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v.

4

1  Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to
2  determine whether an official's acts would chill or silence a person of ordinary firmness
3  from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino
4  Envtl. Ctr., 192 F.3d at 1300).

5        With respect to the fifth prong, a prisoner must affirmatively allege that "'the
6  prison authorities' retaliatory action did not advance legitimate goals of the correctional
7  institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson,
8  778 F.2d 527, 532 (9th Cir. 1985).

9      **3.    Discussion**
10          **a.    Adverse Action**

11        Defendants first argue that Plaintiff's transfer from Pleasant Valley State Prison
12  ("PVSP") to California State Prison, Solano ("SOL") did not constitute adverse action.
13  Defendants' primary argument in this regard is that they had discretion to transfer
14  Plaintiff to another institution, and such discretionary transfers generally do not give rise
15  to a constitutional cause of action.

16        Defendants are correct that prison inmates do not have a constitutional right to
17  be incarcerated at a particular correctional facility or to be transferred from one facility to
18  another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976); see also Olim v. Wakinekona,
19  461 U.S. 238, 244-45 (1983). However, it is well settled that prison officials may not
20  "transfer an inmate to another prison in retaliation for the inmate's exercise of his First
21  Amendment right[s.]" Pratt, 65 F.3d at 806. Defendants' arguments to the contrary are
22  without merit.

23        Plaintiff's allegation that he was transferred to an institution housing inmates who
24  intended to cause Plaintiff harm is sufficient to allege adverse action.

25          **b.    Causation**

26        Defendants next argue that Plaintiff's transfer was not initiated "because of" his
27  protected conduct. They contend that Plaintiff's protected conduct, i.e., his
28  administrative grievance and hunger strike, occurred after the decision to transfer

Plaintiff. Records attached to Plaintiff's first amended complaint do not support Defendants' contentions.

Plaintiff appeared before an ICC on January 26, 2012. (ECF No. 11 at 17.) Therein, Plaintiff's transfer was discussed. The committee elected to transfer Plaintiff to California Medical Facility ("CMF"), or alternatively California Medical Center ("CMC"). (Id.) This transfer was characterized as an "adverse transfer." (Id.)

Plaintiff alleges that he began his hunger strike four days later, on January 30, 2012. (Id. at 6, 18.) On February 8, 2012, Plaintiff submitted a grievance contesting the January 26, 2012 ICC decision. (Id. at 21-23.)

Plaintiff's exhibits reflect that the decision to transfer him to SOL did not occur until February 14, 2012. (Id. at 22.) Plaintiff was transferred to SOL on February 29, 2012. (Id. at 25.)

Plaintiff's claim of retaliation is not predicated on the decision to transfer him, generally, but on the decision to transfer him to SOL, an institution which, Plaintiff alleges, houses inmates who are hostile to Plaintiff. Based on the allegations and exhibits contained in the first amended complaint, this decision did not occur until after Plaintiff engaged in protected conduct. Indeed, the decision to change Plaintiff's proposed transfer from CMF or CMC to SOL was made almost immediately following Plaintiff's protected conduct, and therefore is sufficient to give rise to an inference that the decision was retaliatory.

Accordingly, Plaintiff's first amended complaint sufficiently alleges a causal nexus between his protected conduct and the adverse action.

### c.     Chilling Effect

Defendants argue that the decision to transfer Plaintiff would not chill a person of ordinary firmness because (1) Plaintiff consented to the transfer, and (2) the transfer was motivated by concerns for Plaintiff's safety.

Defendants' contention that Plaintiff consented to the transfer is founded upon the ICC members' statement, in the January 26, 2012 ICC report, that Plaintiff

6

"acknowledged his understanding of and agreement with committee's action." (ECF No. 11 at 17.) However, even if this statement by the ICC committee could be construed to accurately reflect Plaintiff's consent, the transfer at issue at that time was Plaintiff's transfer to CMF or CMC, not to SOL. In any event, Plaintiff's appeal of the January 26, 2012 ICC decision belies any inference that he agreed with the Committee's action.

Defendants' contention that the transfer was motivated by concerns for Plaintiff's safety is a matter of some factual dispute. Safety concerns clearly are documented in the ICC records. However, the first amended complaint and attached exhibits reflect Plaintiff's belief that he safely could remain at PVSP. Plaintiff also clearly believed that a transfer to SOL would not enhance, but instead would impair, his safety. This disagreement cannot be resolved solely on the basis of Plaintiff's complaint, and therefore it is not proper for resolution on a motion to dismiss.

Accordingly, Plaintiff's allegations are sufficient to allege a chilling effect on future First Amendment activities.

### d.     Legitimate Correctional Goal

Finally, Defendants contend that the decision to transfer Plaintiff was supported by the legitimate correctional goal of improving safety for Plaintiff and the institution.

Maintaining the safety of inmates and the institution is unquestionably a legitimate correctional goal. However, as stated above, Plaintiff has alleged that no such safety concerns were present in his case and, in any event, safety was diminished by his transfer to SOL. Although the ICC documents attached to Plaintiff's complaint represent that such safety concerns existed, the statements contained therein are essentially hearsay, and are not sufficient at the pleading stage to refute Plaintiff's allegations.

### 4.     Conclusion

Plaintiff's allegations state a cognizable First Amendment retaliation claim, and Defendants' motion to dismiss for failure to state a claim should be denied.

**B.    Qualified Immunity**

   **1.    Legal Standard**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Resolving a claim of qualified immunity requires courts to determine whether the facts alleged, when taken in the light most favorable to the plaintiff, violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson, 555 U.S. at 244. Therefore, "[i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." Saucier v. Katz, 533 U.S. at 205. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

   **2.    Analysis**

In light of the foregoing analysis, Defendants' argument that they are entitled to qualified immunity cannot stand. Defendants first argue that they are entitled to qualified immunity because Plaintiff's allegations are insufficient to show that a constitutional right was violated. This argument is without merit because, as discussed above, Plaintiff's allegations state a cognizable claim.

Defendants next argue that they are entitled to qualified immunity because their conduct was reasonable in light of established law. However, as stated, Plaintiff had a clearly established constitutional right to be free from retaliatory prison transfers. Pratt, 65 F.3d at 806. Whether Plaintiff's transfer was retaliatory or motivated by legitimate

security concerns is a factual issue that cannot be determined on a motion to dismiss.[1]

Accordingly, the Court cannot determine at this stage of the proceedings that Defendants are entitled to summary judgment.

## C. Official Capacity Claims

Plaintiff's complaint names Defendants in their official and individual capacities. (ECF No. 11.) The Court's screening order did not address Plaintiff's official capacity claims. (ECF No. 13.)

Plaintiff cannot recover money damages from state officials in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Official capacity suits may seek only prospective relief. See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010).

Here, although Plaintiff's complaint sought injunctive relief, his claims for such relief do not appear related to his cognizable First Amendment retaliation claim. The Court's screening order stated that the instant action properly proceeds as one for damages only. (ECF No. 13.) Because Plaintiff may not seek money damages against state officials in their official capacities, his official capacity claims should be dismissed.

## VI. CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendant's motion to dismiss (ECF No. 17) be GRANTED IN PART AND DENIED IN PART. Specifically, the Court recommends that Plaintiff's claims against Defendants in their official capacities be dismissed. Defendants' motion otherwise should be denied.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the

---

[1] Defendants also argue that Defendant Cano is entitled to qualified immunity because his involvement was limited to documenting security concerns involving Plaintiff and he did not participate in the transfer decision. However, support for this assertion is not found in the first amended complaint or attached exhibits.

parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   June 28, 2015                    /s/ *Michael J. Seng*
                                          UNITED STATES MAGISTRATE JUDGE