UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAIYEZ AHMED,<br><br>        Plaintiff,<br><br>    v.<br><br>M. MARTEL, et al.,<br><br>        Defendants. | Case No. 1:13-cv-00941-LJO-MJS (PC)<br><br>**ORDER VACATING FINDINGS AND RECOMMENDATIONS (ECF No. 24); AND**<br><br>**REVISED FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION TO DISMISS (ECF No. 17)** |

**I.    PROCEDURAL HISTORY**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983. The matter proceeds against Defendants Cano, Combs, Davis, Martel, and Shannon on Plaintiff's First Amendment retaliation claim, as set forth in a First Amended Complaint (ECF No. 11).

Before the Court is Defendants' November 25, 2014, motion to dismiss. (ECF No. 17.) On June 29, 2015, the undersigned issued Findings and Recommendations recommending that the motion to dismiss be granted in part. (ECF No. 24.) Upon receipt and consideration of Defendants' objections, the Court now vacates its previous Findings and Recommendations and issues these revised Findings and Recommendations.

## II. **LEGAL STANDARD**

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998. Pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

## III. **PLAINTIFF'S CLAIMS**

The timeline of facts as alleged in Plaintiff's First Amended Complaint and those gleaned from exhibits attached to the pleading are highly relevant to these Revised Findings and Recommendations. Accordingly, the Court will set them forth here in some detail:

1. **Background**

On December 30, 2010, Plaintiff was placed in administrative segregation ("Ad-Seg") at Pleasant Valley State Prison ("PVSP"). (ECF No. 11 at 3.) While in Ad-Seg, Plaintiff experienced health issues, which required that he be admitted to San Joaquin Community Hospital. (ECF No. 11 at 3.) Plaintiff remained at the hospital from January 19, 2012, through January 25, 2012. (Id.)

2

On January 24, 2012, Defendant Cano filled out and served on Plaintiff an Ad-Seg Placement Notice indicating that Plaintiff presented an "immediate threat to the safety of self or other" and "endangered inst[itution] security" based on his influence and history of narcotic trafficking. (ECF No. 11 at 10.) Defendants Combs and Shannon signed off on this notice. (See id.)

**2. The January 26, 2012 ICC Hearing And Continued Placement in Ad-Seg**

Upon his return to PVSP, Plaintiff was told to prepare for an Institutional Classification Committee ("ICC") Hearing. The ICC Hearing was held the next day, on January 26, 2012, and Defendants Martel, Davis, Shannon, and Combs were present. (ECF No. 11 at 17.) At this hearing, Defendants discussed the Ad-Seg Placement Notice, as well as a confidential memorandum dated September 14, 2011, which set forth safety concerns for Plaintiff if he was to be returned to general population. Based thereon, Defendants determined that Plaintiff would remain in Ad-Seg until he could be transferred to either California Medical Facility ("CMF") or California Medical Center ("CMC"). (Id.)

Plaintiff claims that he was denied due process regarding the January 26, 2012 ICC hearing. Specifically, he alleges that (1) Defendants Cano and Combs failed to give 72-hour notice of the hearing; (2) Defendant Shannon failed to give Plaintiff an opportunity to refute allegations and exercise his rights to call witnesses and submit documentary evidence; (3) and Defendant Combs did not interview Plaintiff prior to the hearing. (See ECF No. 11 at 5-6.) Plaintiff then states in a conclusory fashion that "At I.C.C. Defendants Martel, Davis, Shannon, Cano, and Combs conspired to retain Plaintiff in solitary confinement, without notice or due process." (ECF No. 11 at 6.)

**3. Plaintiff's Hunger Strike And 602 Inmate Grievance**

In protest of his continued detention in Ad-Seg and the alleged lack of due process, Plaintiff began a hunger strike on January 30, 2012. (ECF No. 11 at 18.) Plaintiff also filed a 602 Inmate Grievance on February 8, 2012, seeking release from

Ad-Seg and a stay of the transfer order pending conclusion of the appeal process. (ECF No. 11 at 35-36.)

### 4. Plaintiff's Transfer to CSP-Solano

On February 16, 2012, a second ICC hearing was held. (ECF No. 11 at 6.) Defendants Martel, Davis, Shannon, Cano, and Combs were at this second hearing, and they agreed to release Plaintiff to the general population. They also directed Plaintiff to drop his appeal regarding the January 26, 2012 ICC hearing. Plaintiff, however, continued to pursue his appeal, and he was thereafter transferred to California State Prison in Solano, California ("CSP-Solano"). (ECF No. 11 at 8.) Plaintiff claims that his transfer to CSP-Solano, "an institution where Plaintiff would be attacked," was in retaliation for the continued pursuit of his appeal.

## IV. ARGUMENTS

Defendants seek dismissal of the First Amended Complaint for failure to state a cognizable First Amendment claim. Alternatively, they assert that they are entitled to qualified immunity on any such claim. They also argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. (ECF Nos. 17, 20.)

Plaintiff argues that his allegations state a claim for the reasons set out in the Court's screening order, and that Defendants are not entitled to qualified immunity. He does not address Defendants' argument regarding his official capacity claims. He asks for leave to amend any deficiencies found by the Court. (ECF No. 19.)

## V. ANALYSIS

### A. First Amendment Retaliation

#### 1. Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action

4

did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a grievance is a protected action under the First Amendment. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, "[it] would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity . . . ." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999). The correct inquiry is to determine whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. Rhodes, 408 F.3d at 568-69 (citing Mendocino Envtl. Ctr., 192 F.3d at 1300).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

**2.     Analytical History**

**a.     The August 7, 2014 Screening Order**

On August 7, 2014, the Court screened Plaintiff's First Amended Complaint and found that Plaintiff stated a viable First Amended Retaliation claim against Defendants Martel, Davis, Shannon, Cano, and Combs. The Court's analysis was based on the following: (1) Plaintiff's allegation that he was transferred to a more dangerous institution is sufficient to allege an adverse action; (2) The timing of his transfer – twelve days after he was told to discontinue pursuit of his grievance – is sufficient to allege retaliatory intent; (3) Plaintiff's allegation that his filing and continuing to pursue the grievance satisfied the third prong: (4) Plaintiff satisfactorily alleges that he was transferred to a less safe living environment, an action that would chill a person of ordinary firmness from repeating the actions which caused the transfer; and (5) Plaintiff's allegations suggest there was no legitimate penological reason for transferring him.

**b.     Defendants' Motion to Dismiss**

In their motion to dismiss, Defendants argue that Plaintiff fails to state a First Amendment Retaliation claim because a transfer to another institution cannot be considered an "adverse action," that Defendants' decision to transfer Plaintiff pre-dated any protected conduct, that the transfer was consensual, and that transfer the decision advanced a legitimate correctional goal.

**c.     The June 29, 2015 Findings & Recommendations**

On June 29, 2015, the Court issued Findings and Recommendations recommending, inter alia, that Defendants' motion to dismiss be denied as to Plaintiff's First Amendment Retaliation claim.

Regarding Defendants' argument that a transfer to another institution is not adverse, the Court held that, while that may sometimes be true, it is also well settled that prison officials may not "transfer an inmate to another prison in retaliation for the inmate's exercise of his First Amendment right[s.]" Pratt v. Rowland, 65 F.3d 802, 806

(9th Cir. 1995). Plaintiff's allegation that he was transferred to an institution housing inmates who intended to cause Plaintiff harm is sufficient to allege adverse action.

Regarding Defendants' causation argument, the Court found that Plaintiff's claim of retaliation was not predicated on the decision to transfer him, generally, but on the decision to transfer him <u>to CSP-Solano</u>, an institution which, Plaintiff alleges, houses inmates who are hostile to Plaintiff. According to the allegations in the First Amended Complaint, this decision did not occur until <u>after</u> Plaintiff engaged in protected conduct. Indeed, Plaintiff alleges the decision to <u>change</u> Plaintiff's proposed transfer from CMF or CMC to CSP-Solano was made almost immediately following Plaintiff's protected conduct and therefore supports an inference that the decision was retaliatory. Accordingly, the Court found that the pleading sufficiently alleged a causal nexus between Plaintiff's protected conduct and the adverse action.

Lastly, the Court held that the Defendants' arguments that the transfer was consensual and that it served a legitimate penological purpose raised questions of fact not appropriate for consideration on a motion to dismiss.

### d.     Defendants' Objections

On July 10, 2015, Defendants filed objections to the June 29, 2015 Findings and Recommendations insofar as the Court found that Plaintiff stated a First Amendment Retaliation claim. They argue that Plaintiff's claim fails because he did not identify the institution to which he was transferred, he did not attribute the alleged adverse action to any of the named Defendants, and the Defendants' conduct predated the alleged protected conduct.

### 3.     Discussion

On review of Defendants' objections to the June 29, 2015 Findings and Recommendations, the Court finds it necessary to issue these revised Findings and Recommendations regarding Plaintiff's First Amendment Retaliation claim.

### a.     Adverse Action

Defendants first argue that Plaintiff has not alleged adverse action because he

7

failed to specify the relevant institution in the First Amended Complaint. This contention is without merit. It is evident from the exhibits referenced in and attached to Plaintiff's pleading that Plaintiff is referring to his transfer to CSP-Solano. (See ECF No. 11 at 22; U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (When ruling on a Rule 12(c) motion, the court may consider certain documents outside of the pleadings, such as "documents attached to the complaint [and] documents incorporated by reference in the complaint," without converting the motion into a motion for summary judgment.").)

### b.    Causation

Defendants next argue that Plaintiff's transfer was not initiated "because of" his protected conduct. They contend that Plaintiff's protected conduct, i.e., his administrative grievance and hunger strike, occurred after Defendants' decision to transfer Plaintiff. Defendants' point is well-taken. Re-review of Plaintiff's First Amended Complaint and exhibits to it reveals that Plaintiff has indeed failed to establish a causal nexus between Defendants' actions and Plaintiff's protected conduct.

Plaintiff alleges in the First Amended Complaint that (1) during a January 26, 2012 ICC hearing, Defendants ordered Plaintiff to remain in Ad-Seg pending his transfer to CMF or CMC; (2) he thereafter participated in a hunger strike and filed a grievance; (3) at a second ICC hearing on February 16, 2012, Defendants decided to release Plaintiff to general population and told him to stop pursuing his appeal; (4) Plaintiff continued to pursue his appeal; and (5) in retaliation, Defendants decided to send Plaintiff to CSP-Solano, a more dangerous institution.

While, as noted, the Court concluded that such allegations state a claim, the exhibits attached to the pleading are, indeed, inconsistent with the allegations and, indeed, contradict them.

The exhibits attached to the First Amended Complaint reveal two critical contradictions. First, they reveal that the decision to transfer Plaintiff to CSP-Solano was made on February 14, 2012, two days before the second ICC hearing and thus before Defendants allegedly told Plaintiff to stop pursuing his appeal. (See ECF No. 11 at 40.)

Second, they reveal that the decision to transfer Plaintiff to CSP-Solano was made by a Classification Staff Representative ("CSR") (id.). Plaintiff did not allege that any of the Defendants are CSRs (see ECF No. 11 at 2-3).

In short, while Plaintiff alleges in his First Amended Complaint that Defendants decided to transfer him to CSP-Solano after the February 16, 2012, ICC hearing, his exhibits reveal the transfer decision was actually made before the February 16, 2012 ICC hearing and by someone other than the named Defendants. Plaintiff's conclusory statement that the Defendants "are who authorized the illegal transfer" is without support in the factual allegations.

Generally, on a 12(b)(6) motion the court must accept all well-pleaded material factual allegations as true. Putnam Family P'ship v. City of Yucaipa, Cal., 673 F.3d 920, 925 (9th Cir. 2012). However, exhibits to the complaint are part of the complaint for all purposes, Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1124 (9th Cir. 2013), and the court need not "accept as true allegations that contradict exhibits attached to the [c]omplaint." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); accord Interstate Natural Gas Co. v. S. Cal. Gas Co., 209 F.2d 380, 384 (9th Cir. 1953) (noting that a "motion to dismiss … does not admit ... facts which are revealed to be unfounded by documents included in the pleadings"). In practice, to warrant departure from the traditional rule that a complaint's well-pleaded factual allegations are accepted as true, the contradiction between the complaint and its exhibit "must be virtually inescapable." William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial § 9:226 (2013). Thus, a plaintiff is not required "to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 455 (7th Cir. 1998). Nor are a complaint's allegations contradicted by "authorities' possibly self-serving statements" in "a report asserting that defendants did everything possible to ... protect plaintiff." Scanlan v. Sisto, 2012 WL 1130668, at *3 (E.D. Cal. Mar. 28, 2012); see Jones v. City

of Cincinnati, 521 F.3d 555, 561 (6th Cir. 2008) (recognizing that treating an attachment "as part of a pleading does not mean that we assume everything [defendants] said in [the attachment] is true"); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 675 (2d Cir. 1995) (explaining that plaintiffs may attach an exhibit prepared or authored by a defendant "as a self-serving document rather than a particularization of their claim").

Since the above contradictions as to the date of the alleged retaliation are "virtually inescapable" and because none of the exhibits are "possibly self-serving statements" made by any of the Defendants, the Court finds that the contradictions necessitate a departure from the traditional rule that a complaint's well-pleaded factual allegations are accepted as true. Accordingly, the Court finds that Plaintiff's allegations as to causation are insufficient to state a First Amendment Retaliation claim, and Defendants' motion to dismiss should be therefore granted.

### B.  Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Resolving a claim of qualified immunity requires courts to determine whether the facts alleged, when taken in the light most favorable to the plaintiff, violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

"The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson, 555 U.S. at 244. Therefore, "[i]f the [defendant's] mistake as to what the law requires is reasonable . . . the [defendant] is entitled to the immunity defense." Saucier v. Katz, 533 U.S. at 205. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In light of the finding in favor of Defendants on causation, the Court need not and will not address Defendants' qualified immunity argument.

### C. Official Capacity Claims

Plaintiff's complaint names Defendants in their official and individual capacities. (ECF No. 11.) The Court's screening order did not address Plaintiff's official capacity claims. (ECF No. 13.)

Plaintiff cannot recover money damages from state officials in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Official capacity suits may seek only prospective relief. See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010).

Here, although Plaintiff's complaint sought injunctive relief, his claims for such relief do not appear related to his cognizable First Amendment retaliation claim. The Court's screening order stated that the instant action proceeded as one for damages only. (ECF No. 13.) Because Plaintiff may not seek money damages against state officials in their official capacities, his official capacity claims should be dismissed.

### VI. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY ORDERED that the June 29, 2015 Findings & Recommendations (ECF No. 24) are VACATED; and

IT IS HEREBY RECOMMENDED that Defendants' November 25, 2014 motion to dismiss (ECF No. 17) be GRANTED and Plaintiff's First Amended Complaint be dismissed with leave to amend.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure

to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: August 26, 2015    /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE